**Reese L. THORNTON et al.**

v.

**TOYOTA MOTOR SALES U.S.A. INC., et al.**

**Civ. A. No. 18431.**

United States District Court,
N. D. Georgia,
Atlanta Division.

May 29, 1975.

---

the conclusion tentatively drawn in the February 21, 1975 order that venue does not lie in this court; and they further agree that the correct forum is in the Southern District of Georgia, Brunswick Division, where the claim arose.

█ Since venue is improper in this court, transfer under 28 U.S.C. § 1404(a) is foreclosed. 1 Moore's *Federal Practice,* ¶ 0.145 [3.–1]; *Nizami v. Woods,* 263 F.Supp. 124 (S.D.N.Y. 1967); *Viaggio v. Field,* 177 F.Supp. 643 (D.Md.1959). Therefore, the question now becomes whether the case should be dismissed or transferred under 28 U.S.C. § 1406(a), which provides that:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The first step is to determine if there is another federal district and division in which the instant suit "could have been brought." This phrase has generally been construed to require that the transferee district must have subject matter jurisdiction and proper venue and that the defendants must be amenable to service of process issuing out of that court. Moore's, *supra,* ¶ 0.146[5], *cf.* ¶ 0.145[6.–1]; *Annotation,* 3 A.L.R. Fed. 467, §§ 18–20 (1970); *Griffin v. Connally,* 127 F.Supp. 203 (S.D.Tex.1955); See also *Smith v. Murchison,* 310 F. Supp. 1079 (S.D.N.Y.1970); *cf. Harry Rich Corporation v. Curtiss-Wright Corporation,* 308 F.Supp. 1114 (S.D.N.Y. 1969).

From what has thus far transpired in this case, see order of February 21, 1975, it is clear that both proper venue and subject matter jurisdiction would exist in the Brunswick Division of the Southern District of Georgia. Thus, the availability of 28 U.S.C. § 1406(a) as a vehicle for effectuating transfer of the action to that court turns solely on

Ross & Finch, Atlanta, Ga., for plaintiffs.

N. Forrest Montet and Malcolm P. Smith, Atlanta, Ga., for defendants.

### ORDER

HENDERSON, District Judge.

Pursuant to the order of February 21, 1975, the parties filed supplementary briefs on the issue of whether this suit was properly brought in this district pursuant to the provisions of 28 U.S.C. § 1391(a) and (c), and, additionally, whether dismissal or transfer is warranted under either 28 U.S.C. §§ 1404(a) or 1406(a). From those briefs, it is apparent that all parties concur in

whether the defendants can be properly served in the transferee district.[1]

In their joint brief responding to the order of February 21, 1975, the defendants collectively assert, without elaboration or evidentiary support, that none of them are amenable to service of process in this case by any federal court within the State of Georgia. This allegation is premised upon their further argument that they, as nonresident defendants, were not subject to personal jurisdiction under the Georgia long arm statute, Ga. Code Ann. § 24–113.1, and, therefore, not susceptible to service of process under Rule 4(d) or (e), Fed.R.Civ.P., in conjunction with Ga.Code Ann. § 24–115. However, only one of the defendants, Toyota Motor Company, Ltd., actually moved to quash service of process and for dismissal on those grounds. Consequently, in resolving amenability to process issuing from the Southern District of Georgia, only the contentions of Toyota Motor Company, Ltd., will be considered.[2]

The complaint, as amended, seeks to recover for personal injuries and consequential damages incurred by the plaintiffs as a result of an automobile accident occurring approximately eight miles south of Baxley, Georgia. The plaintiffs allege that while they were riding in the vehicle, a 1973 Toyota automobile, a mechanical failure caused it to leave the highway and strike a tree. The operative portion of the complaint, insofar as Toyota Motor Company, Ltd., is concerned, avers that:

The aforesaid collision and resulting injuries and damages to plaintiff was [sic] caused by the negligence of the defendant, Toyota Motor Company, Ltd., in that said defendant negligently designed, manufactured, distributed and sold said automobile with defective brakes.

Amended Complaint, ¶ 15. The complaint also charges the other defendants with negligence for failure to inspect the brakes, and all defendants are charged with failing to warn of the purported defect.

In support of its position that it cannot be validly served by a Georgia federal or state court, the defendant, Toyota Motor Company, Ltd., maintains that it is a corporation organized and existing under the laws of Japan. It further represents:

That TOYOTA MOTOR COMPANY, LTD., is a manufacturer of Toyota automobiles. That all such automobiles are manufactured in the Country of Japan and are sold in the Country of Japan to TOYOTA MOTOR SALES COMPANY, LTD., the exporter and likewise a Japanese corporation in which TOYOTA MOTOR COMPANY, LTD., has a 39.14% ownership interest in the stock. TOYOTA MOTOR COMPANY, LTD., owns 50% of TOYOTA MOTOR SALES, U. S. A., INC., [another defendant here] which is the national importer of Toyota automobiles, purchasing same from TOYOTA MOTOR SALES COMPANY, LTD. That SOUTHEAST TOYOTA DISTRIBUTORS, INC., [another defendant here] is an independent corporation in which none of the other defendants have any ownership interest, and SOUTHEAST TOYOTA DISTRIBUTORS, INC., a Florida corporation, is the distributor for Toyota automobiles in the South-

---

1. Although the defendant Toyota Motor Company, Ltd., filed a motion on March 19, 1975 challenging the validity of service of process upon it and this court's *in personam* jurisdiction, these matters have no direct bearing on the issue now at hand concerning the propriety of a Section 1406(a) transfer. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) ; *Parham v. Edwards,* 346 F.Supp. 968 (S.D.Ga.1972),

aff'd, 470 F.2d 1000 (5th Cir. 1973) ; *Taylor v. Love,* 415 F.2d 1118 (6th Cir. 1969), *cert. den.* 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed. 2d 533.

2. Of course, it should be parenthetically observed that the following conclusions bearing on Toyota Motor Company, Ltd., would appear to apply in substance to the other defendants.

eastern part of the United States, which includes the State of Georgia. That none of the defendants in this case have any control, in any form or fashion, over SOUTHEAST TOYOTA DISTRIBUTORS, INC., as to when, where and/or to whom, etc., it may sell a Toyota automobile. That a Toyota automobile manufactured by TOYOTA MOTOR COMPANY, LTD., is sold to TOYOTA MOTOR SALES COMPANY, LTD., and title to such vehicle passes in Japan. That TOYOTA MOTOR SALES, U. S. A., INC., imports Toyota automobiles by purchasing same from TOYOTA MOTOR SALES COMPANY, LTD., and title to such vehicle passes to TOYOTA MOTOR SALES, U. S. A., INC., before or at the time such vehicles reach the United States. That Toyota automobiles which may ultimately reach the State of Georgia are sold into the State of Georgia by an independent distributor company, SOUTHEAST TOYOTA DISTRIBUTORS, INC., who purchases such vehicles from TOYOTA MOTOR SALES, U. S. A., INC., and which vehicles enter the United States through Jacksonville, Florida, at which time title passes to SOUTHEAST TOYOTA DISTRIBUTORS, INC. TOYOTA MOTOR COMPANY, LTD., has never manufactured or produced any product in the United States of America, never had any representative stationed in the State of Georgia, never sent any agent or employee into the State of Georgia on business connected with TOYOTA MOTOR COMPANY, LTD., has never owned real or personal property in the State of Georgia, has never sent representatives into the State of Georgia to solicit business, has never solicited business in the State of Georgia through any agent or employee, has never existed under the laws of the State of Georgia, or under any other laws of the United States of America, and has never been authorized to transact business in the State of Georgia or any other State in the United States of America, has never done business or transacted business within the State of Georgia, has never solicited business in the State of Georgia, and all of its places of business are located without the State of Georgia and always have been, has never been domesticated under the laws of the State of Georgia or any other State in the United States of America, has never maintained a place of business in the State of Georgia, has never had a designated agent within the State of Georgia upon whom service could be effected, or any other agent upon whom service could be effected, has never produced or manufactured any product in the United States of America, and has never dealt directly with any individual or entity located within the State of Georgia.

Brief of Toyota Motor Company, Ltd., filed March 19, 1975, at 3–4. Based upon this recitation of facts, the defendant contends that, as a matter of state and federal constitutional law, it has had insufficient contacts with Georgia to render it amenable to suit here.

In a diversity suit such as this, "a federal district court may exercise *in personam* jurisdiction over a foreign defendant only if a state court could do so in the proper exercise of state law." *Mack Trucks v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1031 (5th Cir. 1975). See also *Arrowsmith v. United Press International*, 320 F.2d 219 (2nd Cir. 1963). In Georgia, personal jurisdiction over nonresident defendants is obtained pursuant to the Georgia long arm statute, which provides in relevant part that:

A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he

were a resident of the State, if in person or through an agent, he:

(a) Transacts any business within this State; or

(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State
. . . ..

Ga.Code Ann. § 24–113.1. Although, at first glance, it would appear that the existence of *in personam* jurisdiction over the foreign defendants in this case is governed by the more stringent standard of subsection (c) of the statute, the Georgia courts have construed subsection (b) to confer personal jurisdiction over nonresidents where "the negligence occurred outside the State of Georgia and the damage resulting therefrom occurred inside the State of Georgia." *Davis v. Haupt Brothers Gas Company,* 131 Ga.App. 628, 630, 206 S.E.2d 598, 600 (1974); citing *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, 195 S.E. 2d 399 (1973). See also *Mize v. Dries &*

*Krump Manufacturing Company, Inc.,* Civil Action No. 13,705 (N.D.Ga. Jan. 22, 1973).[3] The plaintiffs are, therefore, correct in urging that they need only establish fulfillment of the requirements of subsection (b), *supra,* to acquire personal jurisdiction over these defendants, in addition, of course, to meeting the fundamental prerequisite that the exercise of such jurisdiction comport with the principles of due process. However, this dual inquiry is facilitated by the well settled view that the Georgia long arm statute is "coterminus with the Due Process Clause." *Stanley v. Local 926 of the International Union of Operating Engineers of the AFL– CIO,* 354 F.Supp. 1267, 1271 (N.D.Ga. 1973). See also *Coe & Payne Co. v. Wood-Mosaic Corp., supra; Griffin v. Air South, Inc.,* 324 F.Supp. 1284 (N.D. Ga.1971); *Marival, Inc. v. Planes, Inc.,* 302 F.Supp. 201 (N.D.Ga.1969).

The plaintiffs make no attempt to demonstrate that Toyota Motor Company, Ltd. directly engaged in business or other activities within the State of Georgia; and, indeed, it appears that they could not make such a showing in light of the documentary evidence submitted by the defendant. On the other hand it is not seriously disputed, for the purpose of the transfer question, that the injuries occurred in this state as a result of the allegedly defective brakes

---

3. Toyota Motor Company, Ltd. argues that subsection (c), upon becoming effective on July 1, 1970, superseded subsection (b) insofar as out-of-state negligent acts or omissions causing in-state injuries are concerned, citing *Thorington v. Cash,* 494 F.2d 582 (5th Cir. 1974) and *Harris v. North American Rockwell Corporation,* 372 F.Supp. 958 (N. D.Ga.1974). While those cases do indeed appear to suggest such a construction of the long-arm statute, that result would be inconsistent with the equally recent pronouncement of the Georgia Court of Appeals in *Davis v. Haupt Brothers Gas Company, supra,* endorsing the continuing vitality of Georgia Supreme Court's expansive reading of subsection (b) in *Coe & Payne Co. v. Wood-Mosaic Corp., supra.* Admittedly, the effect of this liberal application of subsection (b) is to virtually read subsection (c) out of existence and render it superfluous, since it adds nothing to the extent of *in per-*

*sonam* jurisdiction available under subsection (b), while seemingly imposing an additional and more stringent test of business contacts with the forum state. See *Mize v. Dries & Krump Manufacturing Company, Inc., supra;* Annual Survey of Georgia Law, Agency & Business Associations, 25 Mercer L.Rev. 21, n. 145 at 42 (1974) and Trial Practice and Procedure, 25 Mercer L.Rev. 265, 269 (1974); McQueen and Tanner, Foreign Corporations in Georgia, 10 Ga. State Bar J. 243, 255 (1973); Comment, 10 Ga. State Bar J. 164 (1973). Nevertheless, the Georgia courts have given no indication that the expansive interpretation of subsection (b) in the Coe & Payne Co. case was merely an interim measure to fill the previously existing gap in Georgia long arm jurisdiction until the then enacted, but not yet effective, subsection (c) became available to plaintiffs seeking relief from nonresident tortfeasors.

in an automobile manufactured by the defendant outside of Georgia. Nor is there any disagreement that the defendant placed its product in the international channels of commerce and that it eventually came into the possession of the plaintiffs, who are residents and citizens of Georgia. Thus, the essential inquiry is whether subsection (b) of Ga. Code Ann. § 24–113.1 and the due process clause coextend to permit exercise of *in personam* jurisdiction over a nonresident manufacturer of an allegedly defective or negligently manufactured product which, through the normal stream of commerce, ultimately reaches and causes injury in the forum state, irrespective of the nature and extent of any other form of direct business in or contacts with that state by the manufacturer.

As previously noted, the jurisdictional reach of Ga.Code Ann. § 24–113.1(b) is limited only by the ultimate constraints imposed by the due process clause. In defining the bounds set by the federal concept of due process, the United States Fifth Circuit Court of Appeals stated that:

> The governing principle is the fairness of subjecting a defendant to suit in a distant forum. Only if the nonresident defendant has such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co. v. Washington*, 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), or if the defendant has performed some act "by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), may the forum, consistently with due process, extend its long arm to embrace it.

*Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1234 (5th Cir. 1973). Applying these abstract principles to the context of injuries caused by a negligently manufactured product, the Court of Appeals acknowledges that:

> [F]or purposes of due process, a nonresident who sends a defective product into the forum state or for that matter who simply places the product in the stream of commerce with reason to anticipate that it may find its way into the forum state may well be amendable [sic] to service of process . . . . .

*Thorington v. Cash*, 494 F.2d 582, 586–87 (5th Cir. 1974). And, while even under this approach, the Fifth Circuit also looks to "other activities within the forum, even though wholly unrelated to the suit," *Jetco Electronic Industries, Inc. v. Gardiner, supra*, at 1234, it has held this requirement to be satisfied by the presence within the forum state of a "substantial number" of the manufacturer's product. *Coulter v. Sears, Roebuck and Co.*, 426 F.2d 1315 (5th Cir. 1970). See also *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969); *cf. Benjamin v. Western Boat Building Corporation*, 472 F.2d 723 (5th Cir. 1973), *cert. den.* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64; *Dawkins v. White Products Corp.*, 443 F.2d 589 (5th Cir. 1971); *Barrett v. Browning Arms Company*, 433 F.2d 141 (5th Cir. 1970); *Delray Beach Aviation Corp. v. Mooney Aircraft, Inc.*, 332 F.2d 135 (5th Cir. 1964). In *Coulter, supra*, the plaintiffs' property was damaged in Texas by a fire allegedly caused by the malfunction of a television sold to them in that state by Sears, Roebuck and Company and manufactured elsewhere by a nonresident of Texas, Warwick Electronics, Inc. The plaintiffs brought suit in a federal district court in Texas against both the retailer and the manufacturer. Warwick moved to dismiss for want of personal jurisdiction, arguing that it had engaged in no direct business activities

within that state. The court, however, concluded that:

> The Coulters' television followed a route defined by a pattern of distribution established over a long period of time. Warwick sold this allegedly defective product with knowledge that Sears had regularly taken a portion of Warwick's television sets to Texas for resale. Thus, Warwick had ample reason to expect that this television would be retailed in Texas. Warwick has purposefully enjoyed the benefits of the Texas market and the protections of that state's laws. Due process of law is not violated by the exercise of jurisdiction over Warwick in the state of Texas.

*Id.* at 1320.[4]

■ The court's reasoning in *Coulter, supra,* is directly applicable to and, therefore, controlling in the present case. The record here does not actually disclose the extent of sales within Georgia of motor vehicles manufactured by the defendant. Nevertheless, one need only observe the advertising of the defendant's product in the media within Georgia, the proliferation of dealerships within this state selling Toyota automobiles, and the large numbers of its automobiles on Georgia roadways to sense its extensive presence, albeit indirect, in this state. It is certainly a reasonable, if not mandatory inference that at least a substantial portion of the defendant's total production is designated for the American market, of which Georgia consumers would comprise a proportional part. It is also logical to surmise from this that the defendant sells its products to distributors in full contemplation of their ultimate resale in the various states. Thus, clearly this is a case in which the defendant's product appears in the forum state by design and not by fortuitous circumstances. Toyota Motor Company, Ltd. derives substantial revenue by placing its product in channels of international commerce knowing full well that normal product migration through the distributive chain will inevitably bring a significant number of its automobiles to the retail market in Georgia. In light of this scope and pattern of business, the defendant should reasonably anticipate that its product will reach Georgia residents and, if defectively manufactured, cause injury to them.

In this perspective, the defendant's contacts with the State of Georgia would clearly meet the two-step test requiring first, that there be certain minimal contacts with the forum state resulting from an affirmative act of the defendant and, second, that it be fair and reasonable to require the defendant to defend a suit brought in this state. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494 (5th Cir. 1974); 2 Moore's *Federal Practice,* ¶ 4.25(5) at 1171–72. The first step is easily satisfied under the *Coulter* rationale. Nor would it be unreasonable or unfair to make Toyota Motor Company, Ltd., the ultimate beneficiary of sales of its product in Georgia, answerable to suits here for the negligently inflicted injuries arising directly out of those sales. In fact, it would be more burdensome to those injured by the defendant's business activities to allow it to insulate itself from claims arising within the United States. In the balance, the defendant is much

---

4. Such an application of the "stream of commerce" theory comports fully with the expanding notions of due process regarding jurisdiction over the person of nonresident manufacturers. See *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969); *Saccamani v. Robert Reiser & Company, Inc.,* 348 F.Supp. 514 (W.D.Pa. 1972); *Smiley v. Gemini Investment Corp.,* 333 F.Supp. 1047 (W.D.Pa.1971); *Blum v. Kawaguchi,* 331 F.Supp. 216 (D.Neb.1971); *Yoder v. Yamaha International Corporation,* 331 F.Supp. 1084 (E.D.Pa.1971); *Benn v. Linden Crane Co.,* 326 F.Supp. 995 (E.D. Pa.1971); *Keckler v. Brookwood Country Club,* 248 F.Supp. 645 (N.D.Ill.1965); *Coe & Payne Co. v. Wood-Mosaic Corp., supra; Philips v. Anchor Hocking Glass Corp.,* 100 Ariz. 251, 413 P.2d 732, 19 ALR2d 1 (1966); *Gray v. American Radiator & Standard Sanitary Corporation,* 22 Ill.2d 432, 176 N.E.2d 761 (1961); cf. *Velandra v. Regie Nationale Des Usines Renault,* 336 F.2d 292 (6th Cir. 1964); *Reilly v. P. J. Wolff & Sohne,* 374 F.Supp. 775 (D.N.J.1974).

better able to sustain and absorb the expense of litigation in a foreign jurisdiction as an inherent cost of engaging in the manufacturing business. The State of Georgia certainly has a legitimate interest in protecting its consumers from losses caused by the negligence of non-resident manufacturers, and, therefore, the due process clause and, *a fortiori,* subsection (b) of the Georgia long arm statute should be construed broadly enough to support *in personam* jurisdiction over the defendant here.

Having thus established that Toyota Motor Company, Ltd. and presumably the other defendants, would be subject to service of process and personal jurisdiction in the Southern District of Georgia, it is in accord with the general purpose of 28 U.S.C. § 1406(a) to transfer the case to that district where it could originally have been brought. See generally *Goldlawr, Inc. v. Heiman, supra,* 369 U.S. at 466, 82 S.Ct. at 915; *cf. Hoffman v. Blaski,* 363 U.S. 335, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960).

Accordingly, the clerk is directed to transfer the above styled case to the Brunswick Division of the Southern District of Georgia for such disposition as that court may deem proper.