**THE FORT FETTERMAN, Libellee, and Chas. Kurz & Co., Inc., Cross-Libellant, Appellants,**

v.

**SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Libellant and Cross-Respondent, Appellee.**

No. 7604.

United States Court of Appeals
Fourth Circuit.

Argued April 21, 1959.

Decided June 8, 1959.

Charles W. Waring, Charleston, S. C. (Waring & Brockinton, Charleston, S. C., on brief), for appellants.

Huger Sinkler, Charleston, S. C., and James S. Verner, Asst. Atty. Gen., of South Carolina (Sinkler, Gibbs & Simons, Charleston, S. C., and D. R. McLeod, Atty. Gen., of South Carolina, on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and HOFFMAN, District Judge.

PER CURIAM.

Subsequent to our opinion in this case [1] we granted the appellee a rehearing and, at the same time, denied a similar request as filed by appellant. We had previously concluded that, under the situation pre-

1. Fort Fetterman v. South Carolina State Hwy. Dept., 4 Cir., 261 F.2d 563.

sented, the damages should be divided. On rehearing we adhere to our previously expressed view that the improper navigation of the appellant vessel contributed to the resulting damage, but we find it necessary to remand the case to the district court for further proceedings, without directions to divide the damages, to the end that specific findings may be made in light of the Pennsylvania rule. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148.

■ A portion of the prior opinion discusses at length the protruding gear rack, the authority for which is not disclosed on the face of the permit issued by the War Department. We agree with proctors for the parties that the plans and specifications must be considered as a part and parcel of the permit to determine whether the bridge was constructed in accordance with the provisions of 33 U.S.C.A. § 491, 34 Stat. 84. An examination of these documents will not reveal to the untrained eye the status of the protruding gear racks when the bascule span is fully open. We are now told, however, that an experienced engineer[2] could detect from the plans the operation of the gear racks upon the opening of the bascule span, the result of which would constitute a protrusion beyond the face of the abutment. If such a protrusion was contemplated by the plans, it is not, of course, a deviation from the plans and specifications and there would be no statutory fault with respect to the gear racks, as the structure would be lawful to that extent. We therefore conclude, in order that this important issue be decided in the light of all the available testimony, that on the remand the parties should have an opportunity to present further evidence on the point and that the Dis-

trict Judge should make appropriate findings based on the present record and such additional evidence as the parties may present as to whether the protrusion of the gear racks was in accordance with or in violation of the permit issued by the War Department.

■ We think it clear that the Pennsylvania rule must be applied with relation to the statutory fault existing as to the maximum elevation of the raised bascule spans.[3] While we accepted the lower court's finding that the initial impact between the vessel and the bridge was at the gear rack, we do not agree on the record before us that the damage to the bascule span would not necessarily have occurred under the "reasonable possibility" test as stated in our previous opinion. The trial court, having failed to apply the Pennsylvania rule, may now consider the existing record and will undoubtedly permit further evidence on this point, as well as upon any other contended statutory fault.

We have not heretofore discussed appellee's contention that the bridge alteration of 1928 constituted a ratification of the existing structure when the 1928 permit was issued. Manifestly, this subsequent permit was limited to the placement of two additional dolphins in front of the northeast fender system. It is not relevant to the issues here presented.

■ Appellee seeks to introduce afterdiscovered evidence in the form of a memorandum dated June 5, 1926, addressed to the Chief of Engineers from the District Engineer in which the bridge was reported as completed "in accordance with conditions and plans approved by the Chief of Engineers, May 21, 1923, and the Assistant Secretary of

2. Not called to our attention at the prior argument is the testimony of appellant's expert, Grushky, who intimated that the extent of the protrusion could be determined from the "contract drawings". Appellant insists, however, that the contract drawings are not a part of the plans and specifications approved by the Secretary. We express no opinion as to this point.

3. Our prior opinion states that the bascule spans, when fully open, were required to be raised to an angle of 82 degrees. The findings of the trial court refer to approximately 80 degrees and we are duty-bound to accept this statement as it is, supported by credible evidence.

War, May 23, 1923". Undoubtedly, on rehearing before the trial court this matter will be explored, but we direct attention to the language of Judge Soper in United States v. Norfolk-Berkley Bridge Corp., D.C., 29 F.2d 115. Cf. Monroe v. United States, 184 U.S. 524, 22 S.Ct. 444, 46 L.Ed. 670. Subsequent investigation may reveal that the Chief of Engineers and the Secretary have approved of the deviations in which event the evidence discovered subsequent to this court's prior opinion would be very material.

The decree of the district court is

Affirmed in part, reversed in part, and remanded.